```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
ELIZABETH THOMAS,                    |
                                     |
              Plaintiff,             |
                                     |    04 Civ. 3174 (KMW)(RLE)
    -against-                        |    OPINION AND ORDER
                                     |
OFFICER PICIO, et al.,               |
                                     |
              Defendants.            |
-------------------------------------X
```
KIMBA M. WOOD, U.S.D.J.:

Plaintiff Elizabeth Thomas ("Plaintiff") brings this pro se action against twenty-two defendants pursuant to 42 U.S.C. § 1983.[1] Plaintiff asserts multiple violations of her constitutional and statutory rights. In addition, Plaintiff asserts multiple claims of retaliation for filing various grievances and court actions against prison officials. On December 6, 2006, Defendants moved for summary judgment. (D.E. 74.) On February 8, 2007, Plaintiff cross-moved for summary judgment. (D.E. 86.)

On February 15, 2008, Magistrate Judge Ronald L. Ellis issued a Report and Recommendation ("Report"), familiarity with which is assumed, recommending that Defendants' motion be granted

---

[1] The original complaint named twenty-four defendants. (D.E. 2.) On July 13, 2005, C. Johnson and G. Vizzie were terminated as defendants in this action. As set forth in the Amended Complaint, the remaining twenty-two defendants are: Picio, Maddox, Debra Joy, R. Fiorello, E. Lord, Susan Schultz, Lt. Amarena, Dr. Lewy, Sergeant Vallo, C.O. L. Jackson, C.O. Matis, C.O. Napolitano, C.O. Jannierre, C.O. Ortiz, Sergeant Russo, Sergeant Hammond, C.O. Francis, Sergeant Smith, A. Dixon, Lt. West, C.O. Davis, Nurse Jones, and "John" or "Jane Doe" defendants (collectively, "Defendants"). (D.E. 34.)

1

in its entirety, and Plaintiff's cross-motion be denied in its entirety. (D.E. 91.) Specifically, the Report recommended that the Court dismiss Plaintiff's claims of (1) violation of the right of access to courts; (2) failure to protect; (3) violation of the right to the free exercise of religion; (4) deliberate indifference to a serious medical condition; (5) violation of the right to due process; and (6) violation of the Americans with Disabilities Act of 1990 and the Rehabilitation Act of 1973. The Report further recommended that the Court dismiss Plaintiff's retaliation claims.

The Report informed the parties that, pursuant to Federal Rule of Civil Procedure 72, they had ten days from service of the Report to file any objections. The Report explicitly cautioned that failure to file timely objections would preclude appellate review.

No objections have been filed, and the time to object has expired. See IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993). The Second Circuit "ha[s] adopted the rule that failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision," Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (citations omitted); "[t]he Supreme Court upheld this practice, at least when the parties receive clear notice of the consequences of their failure to object." Id.

2

(citing Thomas v. Arn, 474 U.S. 140, 155 (1985)).

The Court has reviewed the Report and finds it to be well-reasoned and free of any "clear error on the face of the record." Fed. R. Civ. P. 72(b) advisory committee's note; see also Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985). Accordingly, the Court adopts the Report's analysis and recommendations.[2]

However, the Report did not address all of the claims asserted in the Amended Complaint. Construing the Amended

---

[2] The Court corrects four citations provided in the Report. First, the Report's citation to "Farmer v. Berman" should read Farmer v. Brennan, 511 U.S. 825 (1994). (Report 6.) Second, Plaintiff's allegation that "there was [sic] always problems with [her] kosher meals" (Knudsen Decl. Ex. B 177, D.E. 77) is found on page 177 of Plaintiff's deposition transcript, and not on page 174 as cited in the Report. (Id. at 9.) Third, Colon v. Howard, 215 F.3d 227 (2d Cir. 2000) was decided in 2000, and not in 2004 as cited in the Report. (Id. at 13.) Fourth, Plaintiff's negative response to the question of whether she "file[d] a grievance regarding [a] retaliatory work release denial," (Knudsen Decl. Ex. B 228) is found on page 228 of Plaintiff's deposition transcript, and not on page 226 as cited in the Report. (Id. at 19.)
    The Court clarifies the analysis of Plaintiff's retaliation claim based on the denial of a transfer request. The Report granted summary judgment to Defendants on this claim because Plaintiff's "claim[] against 'John Does' are time-barred since she never moved for leave to amend the complaint to add any new defendants." (Report 21.) However, Plaintiff did move for leave to amend the Amended Complaint to substitute Senior Counselor Gishman of Bedford Hills Correctional Facility for the "John Doe" defendant. (See Sept. 1, 2006 Order 1-2, D.E. 68.) Nonetheless, Plaintiff's application for leave to amend was denied as "untimely" because Plaintiff failed to apply within the relevant statute of limitations period. (Id. at 2.) Therefore, Plaintiff failed to name as a defendant any individual "who might have been responsible for denying her transfer" within the relevant statute of limitations period. (Report 20.) Accordingly, it remains appropriate to grant summary judgment to Defendants on this retaliation claim.

3

Complaint liberally, as the Court must,[3] Plaintiff asserts (1) three additional due process claims; (2) two additional access to courts claims; (3) one additional free exercise claim; and (4) a right to privacy claim. Defendants moved for summary judgment on the three additional due process claims, and on one of the additional access to courts claims. Plaintiff cross-moved for summary judgment on the other additional access to courts claim, the additional free exercise claim, and the right to privacy claim.

After de novo review, the Court grants summary judgment to Defendants on these seven additional claims.

**I. Summary Judgment Standard**

Summary judgment is properly granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007). The substantive law governing a case will determine which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the

---

[3]Because Plaintiff proceeds pro se, the Court construes her submissions liberally and "interpret[s] them to raise the strongest arguments that they suggest." Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks and citation omitted).

4

nonmoving party." Id.; Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003).

The burden of demonstrating the absence of any genuine issue of material fact rests with the moving party. See Koch v. Town of Brattleboro, 287 F.3d 162, 165 (2d Cir. 2002)(citing Celotex Corp., 477 U.S. at 323). Once a motion for summary judgment is made and supported, "the non-moving party must set forth specific facts showing that there is a genuine issue for trial." Id. (internal quotation marks and citation omitted); Fed. R. Civ. P. 56(e)(2). At this stage, all inferences must be drawn in favor of the non-moving party. See Liberty Lobby, 477 U.S. at 255.

"[I]n the case of cross-motions for summary judgment, a moving party's failure to establish that the facts are undisputed does not entitle the non-moving party to summary judgment." Lowenschuss v. Kane, 520 F.2d 255, 261 (2d Cir. 1975). However, the Court may award "summary judgment to a non-moving party where it appear[s] from the papers, affidavits and other proofs submitted by the parties that there [a]re no disputed issues of material fact and that judgment for the non-moving party [is] appropriate as a matter of law." Id.; see also First Fin. Ins. Co. v. Allstate Interior Demolition Corp., 193 F.3d 109, 115 (2d Cir. 1999) ("as long as some party has made a motion for summary judgment, a court may grant summary judgment to a non-moving party"); Coach Leatherware Co. v. AnnTaylor, Inc., 933 F.2d 162,

167 (2d Cir. 1991).

As noted above, the Court construes Plaintiff's submissions liberally and "interpret[s] them to raise the strongest arguments that they suggest." Pabon, 459 F.3d at 248. However, the "application of this different standard does not relieve [P]laintiff of [her] duty to meet the requirements necessary to defeat[,]" or succeed on, a motion for summary judgment. Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks and citation omitted).

**II. Three Additional Due Process Claims**

Plaintiff's three additional due process claims assert that she was denied due process because (1) she did not receive "meaningful" hearings with respect to her placement in Involuntary Protective Custody ("IPC"); (2) she was denied a work release application; and (3) Defendant Dixon failed to respond to Plaintiff's grievance report and used "improper disciplinary procedures" against Plaintiff. Defendants moved for summary judgment on these three claims. (Defs.' Mem. 1-12, 27, 33-35, D.E. 83.)

"[T]he threshold questions in a § 1983 claim for denial of due process are (1) whether a plaintiff possessed a liberty interest protected by the Constitution and (2) whether defendants deprived plaintiff of that liberty interest as a result of insufficient process." Smart v. Goord, 441 F. Supp. 2d 631, 639

6

(S.D.N.Y. 2006) (citations omitted); see also Wright v. Coughlin, 132 F.3d 133, 136 (2d Cir. 1998) (citations omitted). After de novo review, the Court grants summary judgment to Defendants on the three additional due process claims.

### A. Plaintiff's IPC Placement

With respect to her first additional due process claim, Plaintiff alleged that (1) the initial hearing that continued her IPC placement was not "meaningful" and that Defendant "Picio, after hearing the evidence agreed to continue [IPC] status to protect the plaintiff from one single inmate Wossa Oulare in direct opposition to Commissioner Directive" (Am. Compl. ¶ 40); and (2) the subsequent reviews of her IPC placement were not "meaningful meetings to determine the reason to continue IPC status" (Id. ¶ 53). Assuming arguendo that Plaintiff possessed a protected liberty interest in remaining free from IPC placement, the Court finds that Defendants did not deprive Plaintiff of that liberty interest as a result of insufficient process at the initial IPC hearing or the subsequent IPC reviews.

#### 1. Initial IPC Hearing

As a form of administrative segregation, placement in IPC requires only minimal due process. "[C]onfinement in administrative segregation requires only an informal, nonadversary review." Smart, 441 F. Supp. 2d at 641 (finding that less process is due in the context of IPC placement than in

the context of disciplinary segregation). "The inmate confined for administrative reasons is entitled to only minimal process – some notice of the charges against [her] and an opportunity to present [her] view to the prison official charged with determining whether to transfer [her] to administrative segregation." Giano v. Selsky, No. 91 Civ. 166, 2002 U.S. Dist. LEXIS 16539, at *16 (N.D.N.Y. Sept. 5, 2002) (internal quotation marks and citation omitted).

The documentary evidence establishes that Plaintiff received due process at the initial IPC hearing. Plaintiff received notice of the initial IPC recommendation (Knudsen Decl. Ex. D IPC Hr'g Tr. 4); Plaintiff received notice of her rights at the IPC hearing (Id. at 3-4); Plaintiff called witnesses at the IPC hearing (See, e.g., id. at 108-10, 147-48, 166); Plaintiff questioned witnesses during the IPC hearing (See, e.g., id. at 67, 134-37); Plaintiff received assistance in preparing for the hearing (Id. at 78-79; Knudsen Decl. Ex. D ET 12-5-05 38); Plaintiff received an opportunity to present her view on IPC placement (See Knudsen Decl. Ex. D IPC Hr'g Tr. 82-106); and Plaintiff had the pre-hearing opportunity to request documents to be reviewed at the IPC hearing (See Knudsen Decl. Ex. D ET 12-5-05 38). Plaintiff appealed the IPC hearing's determination and it was affirmed. (Id. at ET 12-5-05 2.) Therefore, the Court finds that Plaintiff received due process at the initial IPC hearing.

See Giano, 2002 U.S. Dist. LEXIS 16539, at *16-17; see also 7 N.Y.C.R.R. §§ 330.3(b)(1), 254.1-254.6.

Plaintiff's conclusory allegation that the initial IPC hearing was not "meaningful," does not create a genuine issue of material fact. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.") Accordingly, after de novo review, the Court grants summary judgment to Defendants on this ground of the first additional due process claim.

**2. Subsequent IPC Reviews**

An inmate in IPC placement "shall have [her IPC] status reviewed every 30 days by a three-member committee." 7 N.Y.C.R.R. § 330.3(b)(2). "The periodic review can be informal and non-adversarial. These reviews do not require the presence of the accused and do not require the reviewer to always consider new information, since the original reasons for placing the inmate in administrative segregation may continue to be compelling." Giano, 2002 U.S. Dist. LEXIS 16539, at *19-20 (internal quotation marks and citation omitted).

The original reasons underlying Plaintiff's IPC placement remained compelling throughout the duration of Plaintiff's IPC placement. Plaintiff's initial IPC hearing and her subsequent IPC reviews, dated March 28, 2001, May 2, 2001, and May 25, 2001,

explicitly relied on the continued need to separate Plaintiff from inmate Oulare after their February 7, 2001 altercation. (See Pl.'s Cross-Mot. for Summ. J. Ex. D, D.E. 86.) Therefore, the Court finds that Plaintiff received due process at the IPC reviews.[4] Plaintiff's conclusory allegation that "the IPC Committee held no meaningful meetings to determine the reason to continue IPC status," (Am. Compl. ¶ 53) does not create a genuine issue of material fact. See Kulak, 88 F.3d at 71. Accordingly, after de novo review, the Court grants summary judgment to

---

[4] To the extent that Plaintiff alleged a violation of due process based on the IPC Committee's reliance on "grounds that were not part of the record" at the initial IPC hearing (Am. Compl. ¶ 56), Plaintiff's allegations are completely unsupported by the evidence. The initial IPC hearing included evidence of the need to separate Plaintiff from inmates other than inmate Oulare. (See Knudsen Decl. Ex. D IPC Hr'g Tr. 10 (describing Defendant Amarena's receipt of "information from several inmates that [Plaintiff] was making statements to [these inmates], specific to their particular crimes, that [these inmates] were highly upset by her statement[s,] and they would take action if [Plaintiff] did not stop making the comments to them"), 11 (noting Defendant Amarena's concern that "there might be a physical confrontation eminent [sic]"), and 18 (stating Defendant Amarena's concern that he "may have to place [Plaintiff] in involuntary protective custody for fear of reprisal from the complainants").)

Despite the consideration of such evidence, Plaintiff alleged that the IPC reviews dated May 2, 2001 and May 25, 2001 "raised new grounds for continued [IPC] status." (Pl.'s Cross-Mot. for Summ. J. ¶ 10; Am. Compl. ¶¶ 53, 55-56.) Plaintiff argued that the March 28, 2001 IPC review referred only to the need to separate Plaintiff from inmate Oulare, but the May 2, 2001 and May 25, 2001 reviews referred to the need to separate Plaintiff from inmate Oulare and other inmates. (Am. Compl. ¶ 55.) Although the initial IPC hearing focused on Plaintiff's February 7, 2001 altercation with inmate Oulare, evidence of the need to separate Plaintiff from other inmates was clearly included in the record. Thus, Plaintiff's "bald assertion" that the IPC Committee relied on new evidence is "completely unsupported," and is therefore "not sufficient to overcome a motion for summary judgment." Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (internal quotation marks and citation omitted).

10

Defendants on this ground of the first additional due process claim.

B. **The Denial of a Work Release Application**

With respect to Plaintiff's second additional due process claim, Plaintiff alleged that her due process rights were violated because she was denied a work release application. (Am. Compl. ¶¶ 96, 99, 102.) However, prisoners in New York do not have a liberty interest in the acceptance of a work release application. See Romer v. Morgenthau, 119 F. Supp. 2d 346, 358 (S.D.N.Y. 2000) (holding that "access to work release in the first place" is not a liberty interest and denial of a work release application does not "implicate due process concerns"). Therefore, Plaintiff failed to create a genuine issue of material fact regarding this due process claim. Accordingly, after de novo review, the Court grants summary judgment to Defendants on the second additional due process claim.

C. **Alleged Actions of Defendant Dixon**

With respect to Plaintiff's third additional due process claim, Plaintiff alleged that (1) Defendant Dixon "was notified and refused to act" after Plaintiff filed a grievance related to the confiscation of legal documents in March 2004 (Am. Compl. ¶¶ 123, 124); and (2) Defendant Dixon "used improper disciplinary procedures . . . in violation of due process rights" (Am. Compl. ¶ 125).

First, the Court notes that contrary to Plaintiff's allegations, the documentary evidence submitted clearly establishes that Defendant Dixon responded to Plaintiff's grievance. (See Knudsen Decl. Ex. L 04CV3174 311.) Thus, Plaintiff's "bald assertion" that Defendant Dixon failed to investigate the matter set forth in Plaintiff's grievance is "completely unsupported by the evidence," and is therefore "not sufficient to overcome a motion for summary judgment."[5] Lee, 902 F. Supp. at 429. Accordingly, after de novo review, the Court grants summary judgment to Defendants on this ground of the third additional due process claim.

Second, there is no evidence that Defendant Dixon "used improper disciplinary procedures . . . in violation of due process rights." (Am. Compl. ¶ 125.) Plaintiff's Amended Complaint and her subsequent submissions failed to specify any facts that support this due process claim. Assuming arguendo that Plaintiff sufficiently alleged that Defendant Dixon failed to follow an internal regulation,[6] Plaintiff's due process claim

---

[5]To the extent that Plaintiff alleged a violation of her due process rights based on the thoroughness of Defendant Dixon's investigation, "the manner in which grievance investigations are conducted do[es] not create a protected liberty interest." Odom v. Poirier, No. 99 Civ. 4933, 2004 WL 2884409, at *10 (S.D.N.Y. Dec. 10, 2004) (citing Torres v. Mazzuca, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003)). Thus, Plaintiff failed to create a genuine issue of material fact on this ground.

[6]When questioned about this allegation at her deposition, Plaintiff testified only that "[i]t was something – some rule that [Defendant Dixon] went outside of with a hearing." (Knudsen Decl. Ex. B 265.)

nevertheless fails. See Rivera v. Wohlrab, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) ("the law is settled that the failure to follow a DOCS Directive or prison regulation does not give rise to a federal constitutional claim"). Accordingly, after de novo review, the Court grants summary judgment to Defendants on this ground of the third additional due process claim.

**III. Two Additional Access to Courts Claims**

Plaintiff's two additional access to courts claims assert that (1) legal documents that supported her ADA retaliation claim were confiscated on March 11, 2004 and March 29, 2004 (Am. Compl. ¶¶ 122-123; Pl.'s Mem. 34-35, D.E. 83); and (2) she was denied access to legal materials and the law library (Am. Compl. ¶¶ 45, 46, 50, 52). Defendants moved for summary judgment on the first access to courts claim. (Defs.' Mem. 33.) Plaintiff cross-moved for summary judgment on the second access to courts claim. (Pl.'s Cross-Mot. for Summ. J. ¶¶ 8,9.)

"In order to establish a violation of right of access to courts, a plaintiff must demonstrate that a defendant caused 'actual injury,' i.e., took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'" Monsky v. Moraghan, No. 97-7015, 1997 U.S. App. LEXIS 36158, at *12 (2d Cir. 1997) (quoting Lewis v. Casey, 518 U.S. 343, 351 (1996)). After de novo review, the Court grants summary judgment to Defendants on these two additional access to courts claims.

### A. Alleged Confiscation of Legal Documents

With respect to the alleged confiscation of legal documents, Plaintiff alleged that she suffered "actual injury" because the confiscated documents supported her "ADA retaliation claim against [Defendants] Smith and Francis." (Pl.'s Mem. 34.) However, Plaintiff failed to show that the allegedly confiscated documents would have established her ADA retaliation claim. See Davis v. Goord, No. 01-0116, 2003 U.S. App. LEXIS 13030, at *8 (2d Cir. Feb. 10, 2003) (citing the proposition that "actual injury" includes "the dismissal of an otherwise meritorious claim"). To set forth a retaliation claim, Plaintiff must show that (1) she engaged in a protected activity; (2) Defendants took adverse action against her; and (3) there is a causal connection between the protected activity and the adverse action. See Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004). Plaintiff does not specify how the allegedly confiscated documents would have supported any of the elements of her retaliation claim. Plaintiff's conclusory assertion that the confiscated documents supported her ADA retaliation claim does not create a genuine issue of material fact regarding her retaliation claim. See Kulak, 88 F.3d at 71.

Therefore, Plaintiff failed to create a genuine issue of material fact regarding "actual injury" in the context of her first additional access to courts claim. Accordingly, after de

novo review, the Court grants summary judgment to Defendants on this claim.

### B. Alleged Denial of Access to Legal Materials and the Law Library

With respect to Plaintiff's allegations that she was denied access to legal materials and the law library during her IPC placement (Pl.'s Cross-Mot. for Summ. J. ¶¶ 8, 9; Am. Compl. ¶¶ 45, 46, 50, 52), Plaintiff failed to identify the legal claims she was pursuing or any prejudice suffered.[7] See Duff v. Coughlin, 794 F. Supp. 521, 524 (S.D.N.Y. 1992) (granting summary judgment to the defendants where the plaintiff "did not identify any actual prejudicial effects on [the] plaintiff's legal actions"). Accordingly, after de novo review, the Court finds no genuine issue of material fact regarding Plaintiff's second additional access to courts claim and grants summary judgment to Defendants on this claim.

## IV. One Additional Free Exercise Claim

Plaintiff's additional free exercise claim asserts that she was denied kosher meals for eight days in February 2001. (Pl.'s Cross-Mot. for Summ. J. ¶ 3; Am. Compl. ¶ 21.) In order to succeed on a claim based on the Free Exercise Clause of the First Amendment, a "prisoner must show at the threshold that the

---

[7]The Court notes that the documentary evidence contradicts Plaintiff's allegations regarding denial of access to legal materials. (See Pl.'s Cross-Mot. for Summ. J. Ex. B 04CV3174 42, 44-48, 52-56 (showing compliance with Plaintiff's requests for legal materials).)

15

disputed conduct substantially burdens his sincerely held religious beliefs." Salahuddin v. Goord, 467 F.3d 263, 274-75 (2d Cir. 2006) (citing Ford v. McGinnis, 352 F.3d 582, 591 (2d Cir. 2003)). Assuming arguendo that Plaintiff's maintenance of a kosher diet is a "sincerely held religious belief," the Court finds that Defendants did not "substantially burden[]" this belief.

Although Plaintiff alleged that she was denied kosher food for eight days following her visit to the prison medical facility on February 7, 2001 (Pl.'s Cross-Mot. for Summ. J. ¶ 3; Am. Compl. ¶ 21), she testified at her deposition that she did not recall any problems with her kosher meals from February 9, 2001 until February 23, 2001 (See Knudsen Decl. Ex. B. 174). Plaintiff's "bald assertion" that she was denied kosher meals is therefore "completely unsupported by the evidence."[8] Lee, 902 F. Supp. at 429. Accordingly, after de novo review, the Court finds no genuine issue of material fact regarding a substantial burden and grants summary judgment to Defendants on this additional free exercise claim.

---

[8]Plaintiff's visit to the prison medical facility occurred on the night of February 7, 2001. (See Pl.'s Cross-Mot. for Summ. J. Ex. A 6-22-06 361, 98-99.) Thus, assuming arguendo that Plaintiff was denied kosher meals on February 8, 2001, the Court finds that such a denial is not a substantial burden. See Ford v. McGinnis, 352 F.3d at 594 n.12 (noting that "the mere inability to provide a small number of meals commensurate with a prisoner's religious dietary restrictions was found to be a de minimus burden").

## V. A Right to Privacy Claim

Plaintiff's right to privacy claim asserts that after her involvement in a fight on February 7, 2001, Defendant Vallo ordered that Plaintiff be taken to the prison medical facility for treatment and documentation of her injuries. (Pl.'s Cross-Mot. for Summ. J. ¶ 6; Am. Compl. ¶¶ 20, 39.) Plaintiff alleged that her injuries were restricted to her head and neck (Am. Compl. ¶¶ 20, 39), but she was forced to "strip down to [her] underwear and bra" for photographs of her entire body (Pl.'s Cross-Mot. for Summ. J. Ex. A 6-22-06 374).

"[T]here is a right to privacy in one's unclothed or partially unclothed body." Poe v. Leonard, 282 F.3d 123, 138 (2d Cir. 2002). The Second Circuit has held that:

> [A] police officer violates a person's constitutional right to bodily privacy when that officer manipulates the circumstances to view, to photograph, to videotape or otherwise to record that person's unclothed or partially unclothed body without his or her consent where . . . there is no conceivable investigative or otherwise proper law-enforcement interest advanced by such a viewing.

Id. at 139. However, inmates retain only a "limited right to bodily privacy." Covino v. Patrissi, 967 F.2d 73, 78 (2d Cir. 1992); see also Cook v. City of New York, 578 F. Supp. 179, 182 (S.D.N.Y. 1984) ("[A] state's undeniable interest in preserving internal order and discipline, maintaining institutional security, and pursuing legitimate penological goals justifies the imposition of significant restraints on traditional Fourth

17

Amendment protections.").

The photographing of a prisoner's partially-clothed body by medical staff after the prisoner's involvement in a physical altercation serves the legitimate goal of documenting all potential injuries. Accordingly, after <u>de novo</u> review, the Court finds no genuine issue of material fact regarding a violation of Plaintiff's limited right to bodily privacy and grants summary judgment to Defendants on this claim.

**VI. Conclusion**

For the reasons set forth above, the Court adopts the Report's analysis and recommendations with respect to the claims addressed therein. In addition, the Court grants summary judgment to Defendants on (1) the three additional due process claim; (2) the two additional access to courts claims; (3) the one additional free exercise claim; and (4) the right to privacy claim.

Accordingly, the Court GRANTS Defendants' motion for summary judgment (D.E. 74), and DENIES Plaintiff's cross-motion for summary judgment (D.E. 86). The Clerk of Court is directed to close the case. Any pending motions are moot.

SO ORDERED.

Dated: New York, New York
March **26**, 2008

*[signature]*
Kimba M. Wood
United States District Judge

18